IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **LIZZY JANE FRANCIS PLUG, Individually,** as Next Friend of M.C., a minor, and on Behalf of the Estate of Steven Craenmehr, Deceased; and **ELISABETH HENDRIKA SOFIA MARIA SMIT,** Widow of M.G.H. Craenmehr and Mother of Steven Craenmehr, Individually, <br><br> Plaintiffs, <br><br> V. <br><br> **SXSW HOLDINGS, INC. f/k/a SXSW Inc., SXSW LLC f/k/a SXSW Transition, LLC; PATRICK LOWE; TRAFFIC DESIGN CONSULTANTS LLC; and RASHAD OWENS,** <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CIVIL ACTION NO. SA-14-CA-1110-FB** |

## ORDER GRANTING MOTION TO TRANSFER VENUE
## FROM THE SAN ANTONIO DIVISION TO THE AUSTIN DIVISION

Before the Court are defendants' motion to transfer venue (docket no. 7) from the San Antonio Division of the Western District of Texas to the Austin Division of the Western District of Texas, plaintiffs' response (docket no. 18) and defendants' reply (docket no. 20). After careful consideration, the Court is of the opinion the motion should be granted.

### BACKGROUND

This is one of seven lawsuits filed by families and victims of an alleged drunk driving incident which killed four pedestrians and injured nearly two dozen others during last year's South by Southwest music festival in Austin, Texas. The suits were filed by four law firms in three courts on behalf of eight victims naming SXSW Holdings, Inc. and SXSW Transition, LLC (SXSW), Traffic Design Consultants LLC (TDC) and its owner Patrick Lowe, and Rashad Owens, who is charged with driving into a crowd

of music fans, as defendants. The suits seek unspecified damages and allege festival organizers were negligent and did not take proper traffic control measures to ensure the safety of festival attendees during the event.

SXSW–which attracts hundreds of thousands of musicians, industry entrepreneurs, and spectators to Austin every March–is being represented by an Austin law firm. TDC and Patrick Lowe are also being represented by an Austin law firm. The Hendler Lyons Flores law firm of Austin and the Law Office of Clem Lyons, PC of San Antonio are involved in this suit for plaintiffs, representing the family of Steven Craenmehr, a music executive from The Netherlands, who was killed in the incident. Owens allegedly used the Honda he was driving to push a taxi across an intersection into the bicycle Mr. Craenmehr was riding. Two firms from Dallas and one from Houston are representing plaintiffs in the remaining suits.

This is the only suit which was filed in federal court. Although there is no federal question jurisdiction, diversity jurisdiction exists because: (1) all the plaintiffs are foreign nationals and all the defendants are Texas citizens and Texas-based corporations and (2) it is undisputed the amount in controversy exceeds $75,000. *See* 28 U.S.C. 1332(a)(2) (providing that diversity jurisdiction exists if amount in controversy exceeds $75,000 and action is between "citizens of a State and citizens or subjects of a foreign state"); *see also JP Morgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.,* 536 U.S. 88 (2002) (finding that foreign national is "citizen or subject" of "foreign state" for purposes of 28 U.S.C. § 1332(a)(2)).

This is also the only suit which was filed outside of Austin. Relying on 28 U.S.C. § 1404(a), festival organizers argue this case "should be transferred to the Austin Division because it has no connection to San Antonio and every connection to Austin." Plaintiffs disagree and contend San

Antonio is the better venue for a negligence suit against festival organizers. Plaintiffs emphasize that they chose San Antonio and make a largely burden-focused argument against transfer to the Austin Division. Amidst accusations of Austinites' financial ties to the music festival and its founders' intent to use their ownership interest in *The Austin Chronicle* to "influence the Austin trier of fact," plaintiffs contend they should not be forced to litigate against festival organizers in SXSW's backyard.

## STANDARD OF REVIEW

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have broad discretion in deciding whether to order a transfer" under § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313-14 (5th Cir. 2008) (internal quotation marks omitted). The "§ 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.,* 720 F.3d 285, 288 (5th Cir. 2013).

The preliminary question when considering a motion to transfer venue is whether the suit could have originally been filed in the destination venue. *In re Volkswagen of Am., Inc.,* 545 F.3d at 312. If so, the focus shifts to whether the party requesting the transfer has demonstrated the "convenience of parties and witnesses" requires transfer of the action, considering various public and private interests. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1974); *see also In re Volkswagen of Am., Inc.,* 545

F.3d at 314 n.9 (Although *Gilbert* concerned *forum non conveniens* issues, Fifth Circuit applies "the *Gilbert* factors" in § 1404(a) context.).

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Although the *Gilbert* factors are "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *In re Volkswagen of Am.,* 545 F.3d at 313-15 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.,* 358 F.3d 337, 340 (5th Cir. 2004)). Notwithstanding the broad range of private and public concerns, a court must conduct a "flexible and individualized analysis" when considering a motion to transfer venue. *Ricoh Corp.,* 487 U.S. at 29.

Though this standard is similar to the standard used in the *forum non conveniens* context, 28 U.S.C. § 1404(a) requires a lesser showing of inconvenience. *In re Volkswagen of Am.,* 545 F.3d at 314. As such, the movant need only show the *Gilbert* factors "substantially outweigh" the plaintiffs' choice of venue. *See id.* It is sufficient to show the destination venue is "clearly more convenient" than the original venue. *See id.* Nonetheless, the Supreme Court has cautioned that, while the movant's burden is lessened, the plaintiffs' choice of venue is still to be considered. *See Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1995). Accordingly, the rule in the Fifth Circuit is that, while the plaintiffs' choice

of venue is not a factor under *Gilbert*, it places a "significant" burden of proof upon the movant to "show good cause for the transfer." *In re Volkswagen of Am.*, 545 F.3d at 314 n.10. Therefore, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.

## DISCUSSION

There is no dispute this suit "might have been brought" in the Austin Division where all the defendants reside and where all the events giving rise to the action occurred. 28 U.S.C. § 1391(b)(1), (2). Therefore, the initial hurdle in the § 1404(a) analysis is easily cleared. *See In re Volkswagen of Am.*, 545 F.3d at 314 n.10. The Court next turns to the *Gilbert* factors, beginning with the private interest factors and ending with the public interest factors.

The first private interest factor is the relative ease of access to sources of proof. *Id.* Plaintiffs contend access to proof will not be different between San Antonio and Austin because "virtually all of the non-testimony evidence in this case will be exchanged electronically." Thus, according to plaintiffs, "it will not matter whether this case is tried in San Antonio or Austin." As recently noted by the Honorable Sam Sparks, United States District Judge for the Western District of Texas, Austin Division, "the Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *Dataquill v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 14, 2014) (citing *In re Volkswagen of Am.*, 545 F.3d at 316).

Here, all documents and physical evidence relating to the SXSW music festival, and the site of the incident, are located in Austin. Owens' alleged driving rampage and arrest occurred in Austin. He is being housed there pending his capital murder trial. SXSW, its records and its employees are in Austin. TDC and defendant Lowe are located in Paige, Texas, less than 45 miles from Austin but over

100 miles from San Antonio. The Austin Police Department and Travis County District Attorney's Office, their physical evidence and records are located in Austin. The law enforcement witnesses to the incident and investigating officers are Austin-based. Austin Police Department detectives and any other law enforcement officers investigating the case are also in Austin. The employees who drew and issued the Traffic Control Plan are in the Austin area, as are employees who issued the street closure permits and who arranged for the street-closure barriers. Additionally, neither party has identified any potential sources of proof in San Antonio. This factor weighs in favor of a transfer. *See In re Volkswagen of Am., Inc.,* 545 F.3d at 316 (finding that relative ease of sources of proof factor weighs in favor of transfer when "[a]ll of the documents and physical evidence relating to the [motor vehicle] accident are located in the [transferee division], as is the collision site."); *see also In re Radmax, Ltd.,* 720 F.3d at 288 ("Since neither party has identified any potential sources of proof in the [transferor] Division, [the transferee Division's] relatively easier access to potential documentary evidence favors transfer.").

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *In re Volkswagen of Am.,* 545 F.3d at 316. SXSW has identified City of Austin employees who drafted and issued the traffic control plan and permits, Austin Police Department investigators and officers who arrested and are prosecuting Owens, and Austin first responders and healthcare providers as nonparty witnesses, each of whom would be required to shuttle back and froth to San Antonio if this case is not transferred. *See* FED. R. CIV. P. 45(c)(1)(A) (providing that witnesses within 100 miles of courthouse may be compelled to attend "trial, hearing, or deposition.").

Plaintiffs primarily fault SXSW with failing to provide details as to these named individuals' proposed testimony, but SXSW need not provide such concrete information at this stage of the litigation. *See In re Volkswagen of Am.,* 545 F.3d at 317 n.12 (noting, in *forum non conveniens* context,

affidavits of specific testimony are not required); *Dataquill, Ltd.,* 2014 WL 2722201, at *3 ("When conducting a § 1404(a) analysis, identification of witnesses relevant to issues which might arise at trial is sufficient; district courts need not evaluate the significance of the identified witnesses' testimony.") (internal quotation omitted). Additionally, there is nothing to "counterbalance the weight" of these Austin-area witnesses in the San Antonio Division. *Dataquill, Ltd.,* 2014 WL 2722201, at *3.

Plaintiffs argue transfer is warranted because "[a]ny Texas-based witness can be compelled to testify [at trial] in San Antonio" under Fed. R. Civ. P. 45(c)(1)(B)(ii). Plaintiffs are correct that Rule 45(c)(1)(B)(ii) allows nonparty witnesses who are located in Texas to be compelled to appear for trial within this state. However, a venue which has "absolute subpoena power for both deposition and trial" is favored over one which does not. *In re Volkswagen of Am.,* 545 F.3d at 316. A subpoena may command attendance at a "trial, hearing, or deposition" anywhere "within 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). "Thus, the question is not whether a nonparty witness resides or works within 100 miles of the particular Court issuing the deposition subpoena, but whether there is a deposition site that is *both* within the [Western District of Texas] (and thus subject to the Court's subpoena power) *and* within 100 miles of the nonparty's location (and thus not subject to a motion to quash)." *Sanger Ins. Agency, Inc. v. HUB Int'l, Ltd.,* Case No.: 2:13-CV-528, 2014 WL 5389936, at *3 (E.D. Tex. Mar. 25, 2014) (emphasis in original).

A 100-mile radius around Austin for compulsory process includes all of Austin and San Antonio, plus Killeen (Owens' residence), Temple and the towns of Waco and College Station. It also includes Bryan, the headquarters of N-Line Traffic Management, LP, the contractor which festival organizers have identified as the nonparty witness which provided the City of Austin with barriers used

at the music festival. In contrast, the 100-mile radius around San Antonio reaches the southern half of Round Rock, and omits Killeen, Temple, Waco, Bryan and College Station. Although festival organizers admit they have not yet been able to list "all material witnesses at the scene" because Owens' criminal prosecution is pending, the witnesses which have been identified are more likely to live within 100 miles of Austin than San Antonio. Additionally, plaintiffs do not dispute that Austin-area witnesses–the only identified witnesses–are located within 100 miles of the counties included in the Austin Division, within the Western District of Texas. Moreover, plaintiffs do not suggest a single witness who resides in or around San Antonio. Therefore, from all appearances, only the Austin Court retains the authority under Rule 45 to compel the attendance of the witnesses at a deposition.

With regard to trial, the Court agrees with plaintiffs that either Austin or San Antonio will be able to compel attendance of nonparty witnesses. However, plaintiffs omit from their argument additional language from Rule 45(c)(1)(B)(ii) which provides that nonparty witnesses may not be required to incur "substantial expense" when compelled to give trial testimony. Because all the identified nonparty witnesses are located in or near Austin, an argument can be made that these witnesses will incur substantial travel expense if the trial proceeds in San Antonio, as compared with little or no travel expense if the case is tried in Austin. For example, as festival organizers point out, "because the plaintiffs have not sued the City of Austin, its law enforcement officers and other witnesses would need to be subpoenaed to attend court in San Antonio." Moreover, even if City of Austin witnesses agreed to attend voluntarily, they would be required to travel back and forth between Austin and San Antonio, thereby incurring significantly greater costs and inconveniences.

To the extent it might be a substantial expense, the comments to Rule 45(c)(1)(B)(ii) state that "[w]hen travel over 100 miles could impose substantial expense on the witness, the party that served

the subpoena may pay the expense and the court can condition enforcement of the subpoena on such payment." Fed. R. Civ. P. 45(c)(1)(B)(ii) (comments to 2013 amendment). Given the additional fuel, mileage and food expenses which would be imposed on the Austin-area nonparty witnesses and/or the Austin-based festival organizers in exchange for trial testimony in San Antonio, this Division is not as well equipped as Austin to subpoena nonparty witnesses for trial who reside in Texas, but more than 100 miles away from the courthouse, as long as these witnesses will not incur substantial expense. *Quasebarth v. Green Tree Serv. LLC,* ___ F.Supp.3d ___, No. 4:14-DV-223 (CDL), 2015 WL 918822 (M.D. Ga. Mar. 3, 2015) (determining that transferor court was as "well equipped" as transferree court to subpoena witnesses only "as long as these witnesses will not incur substantial expenses"). This factor weighs in favor of a transfer.

The third private interest factor is the cost of attendance of willing witnesses. *In re Volkswagen of Am.,* 545 F.3d at 317. SXSW has provided a number of Austin-based witnesses who are likely to possess specific knowledge relevant to the accused traffic control plan and the incident, in addition to any of the festival attendees who may be willing to appear to testify. Inconvenience to these witnesses increases as the distance they must travel increases because "traveling to a local court is far more convenient than traveling to a court in another [location]." *Dataquill, Ltd.,* 2014 WL 2722201, at *3.

Plaintiffs argue "the difference in cost for obtaining the presence of witnesses between Austin and San Antonio is negligible" because the distance between the two cities is less than 100 miles. In the Fifth Circuit, "when the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 317 (citation and internal quotation marks omitted). However, this 100-mile threshold does not mean that "transfer *within* 100 miles does not

impose costs on witnesses or that such costs should not be factored into the venue-transfer analysis, but only that this factor has greater significance when the distance is greater than 100 miles." *In re Radmax,* 720 F.3d at 289 (emphasis in original). In *In re Radmax,* the Fifth Circuit found a distance of approximately sixty miles to be sufficient to weigh in favor of a transfer. *Id.* The ninety-mile distance from San Antonio to Austin is similar. Additionally, plaintiffs have not identified any witness residing in this Division. Moreover, plaintiffs will have to travel a great distance whether their case is tried in San Antonio or Austin, and defendants are all residents of the Austin area. This factor weighs in favor of a transfer.

The fourth private interest factor looks to practical concerns in the expedient and in expensive trial of the case. *In re Volkswagen of Am.,* 545 F.3d at 315. This is a lawsuit between foreign plaintiffs and defendant festival organizers with longstanding and significant ties to the Austin Division, both generally and specifically with regard to the issues in this case. All of the identified witnesses are located in the Austin area and defendants have no presence in San Antonio. This factor weighs in favor of transfer.

In sum, because all of the events or omissions giving rise to this lawsuit occurred in Austin, the relative ease of access to sources of proof is better in Austin than San Antonio. All of the defendants who were allegedly negligent are in the Austin area, and plaintiffs are in The Netherlands, so San Antonio is clearly inferior from the standpoint of access to the relevant evidence. Similarly, the availability of compulsory process and cost of transportation for witnesses also weigh in favor of transfer. Plaintiffs are foreign nationals and thus will have to travel from out of the country regardless of whether the case is tried here or in Austin. All of the defendants reside in Austin or the Austin area. All of the non-party witnesses who have been identified also reside in Austin or are in the subpoena

range of the Austin Division for both deposition and trial. Finally, considering "all other practical problems that make trial of a case easy, expeditious and inexpensive," *In re Volkswagen AG,* 371 F.3d at 203, Austin is the preferable forum. All defendants reside in the Austin Division, and all of the conduct at issue in this case occurred in Austin. On the other hand, there does not appear to be anything about trying the case in San Antonio that would make it easy, expeditious or inexpensive. Consideration of the private interest factors thus suggests that it would be more convenient for the parties and witnesses to transfer venue to the Austin Division.

Turning to public interest factors, the first is administrative difficulties related to court congestion. San Antonio and Austin both have busy dockets. The San Antonio Division and the Austin Division are two of the busiest divisions in the Western District of Texas, which itself is one of the busiest districts in the country. *Cadle Co. v. Keyser,* No. A-14-CV-758-LY, 2015 WL 764256, at *4 (W.D. Tex. Feb. 23, 2015) (Report and Recommendation from United States Magistrate Judge Andrew W. Austin). "In 2014, there were 1097 civil cases filed in Austin, and 1092 in San Antonio." *Id.* Austin has fewer active District Judges, although San Antonio has more criminal cases which take precedence over civil matters. There are also six related cases pending in Austin state courts. On balance, "these figures suggest it would not be a prudent use of judicial resources for this Court to resolve a dispute that has no connection with this forum." *Id.* This factor weighs in favor of a transfer of venue to the Austin Division.

Plaintiffs argue "[t]he calendar congestion factor favors San Antonio because of the difficulties of seating a jury in Austin" brought on by pretrial publicity. Specifically, plaintiffs contend an Austin jury will be bias toward SXSW because "many Austinites (and thus, many potential jurors) have financial ties to the SXSW defendants and many others have heard defendants' claims regarding the

festival's enormous positive economic impact on the City of Austin." Plaintiffs also contend festival organizers have "an unusual opportunity" to bias Austinites against them because two of three principals of the SXSW defendants are the editor and publisher of *The Austin Chronicle*, as well as officers of the corporation which owns the weekly publication.

Courts routinely reject speculation of potential future jury bias as a basis for weighing factors in a § 1404(a) analysis. *Andrade v. Chojnacki,* 934 F. Supp. 817, 835 (S.D. Tex. 1996) (rejecting argument that civil lawsuit should not be transferred to Waco based on speculation that jury pool may be biased by pretrial publicity against Branch Davidian survivors and decedents); *Bussey v. Safeway Stores, Inc.,* 437 F. Supp. 41, 44 (D. Okla. 1977) (transferring lawsuit to venue with greater connection to litigation and rejecting plaintiff's "speculative argument" that he could not get fair trial there due to adverse publicity he received there). Moreover, "the fact that [Austin] jurors might [benefit from SXSW] and have a financial interest–or at least a perceived interest–in the outcome of this suit does not necessarily mean they will be biased against plaintiffs." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.,* No. 3-08-CV-1779-L, 2009 WL 918459, at *6 (N.D. Tex. Apr. 3, 2009) (speculation that utility customers will benefit from any recovery by utility company does not weigh in favor of transfer). Nor does the fact that SXSW founders might have a business interest in *The Austin Chronicle* necessarily mean they have the intent–or even the ability–to engage in a media conspiracy to make tactical use of the newspaper to bias Austin jurors against plaintiffs. *See Thurmond v. Compaq Computer Corp.,* No. 1:99-CV-0711(TH), 2000 WL 33795090, at *13 n.15 (E.D. Tex. Mar. 1, 2000) (declining to find "media conspiracy" based on defendant's speculation that plaintiff's attorney would make "tactical use" of his ownership interest in local newspaper to bias jury pool). In any event, "[i]f the case proceeds to trial, the Court and the lawyers can use proven voir dire techniques to eliminate potential jurors with

any actual bias." *BlueEarth Biofuels, LLC,* 2009 WL 918459, at *6; *see also Thurmond,* 2000 WL 33795090, at *13 ("[V]oir dire is the cure for any 'bias' that may result from exposure to pre-trial publicity."); *Los Angeles Memorial Coliseum v. National Football League,* 89 F.R.D. 497, 502-10 (C.D. Cal. 1981) (analyzing numerous cases involving requested venue changes based on pretrial publicity and concluding that matter would best be handled at voir dire stage of proceedings); *Hawaii v. Standard Oil,* 301 F.Supp. 980 (D. Hawaii 1969) (concluding that, in complex case which was still in preliminary stages, any decision regarding change of venue based on pretrial publicity should be made when trial is imminent). In this regard, the Austin Division draws its jury pool from seventeen different counties, not just Austin. Should bias or pretrial publicity be a problem, Austinites could be excluded from the jury pool.

The second public interest factor is the local interest in resolution of the case. *Id.* Plaintiffs argue "while there is local interest [in Austin] in adjudicating the safety of SXSW festival-goers, the outcome of this case is relevant to citizens of every Texas community with street festivals, including San Antonio." In *In re Volkswagen of Am.,* 545 F.3d at 317-18, the Fifth Circuit rejected a similar argument. The Court found that the public interest factor weighed in favor of transfer because the automobile accident occurred in Dallas, the witnesses lived and worked in the Dallas Division, and Dallas police and paramedics responded and took action, and the evidence was located in Dallas. *Id.* Plaintiffs argued that Marshall had a local interest in the litigation over an accident that happened in Dallas because the same model car was sold in Marshall and because Marshall citizens "would be interested to know" whether a defective vehicle was sold there. *Id.* at 318. The Court found that if an unrelated forum could claim a "local interest" because a similar event might one day happen there, that "rationale could apply virtually to any judicial district or division in the United States" and "would

stretch[ ] logic in a manner that eviscerates the public interest that this factor attempts to capture." *Id; see also Untershine v. State Farm Fire & Cas. Co.,* No. 1:06-cv-104, 2007 WL 628490, at *2 (S.D. Miss. Feb. 27, 2007) (denying change in venue in lawsuit over Hurricane Katrina insurance claims because "moving this case to a distant venue would have the effect of excluding the members of the communities most affected by the events in question from the legal process of resolving the disputes that the events have generated").

Given that all of the events and omissions giving rise to this lawsuit occurred in the Austin Division, the citizens there have a direct interest in the allegations made against festival organizers there. This case is about a festival participant accused of killing two pedestrians, a cyclist (the deceased plaintiff in this case) and a motorcycle passenger, and injuring many others in downtown Austin. Whether festival organizers were negligent and did not take proper traffic control measures to ensure the safety of festival attendees during the event "calls into question the work and reputation" of residents of Austin, not San Antonio. *See Dataquill, Ltd.,* 2014 WL 2722201, at *4. "Any connection to the San Antonio Division is tenuous at best while the [Austin] Division has a clear interest in this litigation." *See McCloud v. McClinton Energy Group, LLC,* Civil Action No. 5:14-cv-620-XR, 2014 WL 6388417, at *16 (W.D. Tex. Nov. 14, 2014) (finding no localized interest in having dispute decided in San Antonio where events giving rise to lawsuit occurred in Midland, defendant's principal place of business was in Midland, and San Antonio had "no connection" to plaintiffs). The public interest factor weighs in favor of a transfer.

The third and fourth public interest factors concern the familiarity of the forum with the governing law and the avoidance of conflict of laws problems. *In re Volkswagen of Am.,* 545 F.3d at 315. Neither factor is relevant here because neither district has demonstrated an advantage in applying

Texas negligence law and the parties have not raised any potential conflict of laws issues. *See Thurmond v. Compaq Computer Corp.,* No. 1:99-CV-0711(TH), 2000 WL 33795090, at *13 (N.D. Tex. Mar. 1, 2000) ("Since the plaintiffs bring federal and Texas-state claims and transfer is sought between federal divisions of the same state, Texas, this factor is inapplicable."). These factors are neutral.

Having balanced the *Gilbert* factors, the Court finds festival organizers have met their burden to show that the Austin Division of this District is a clearly more convenient forum sufficient to disturb plaintiffs' choice of San Antonio as the appropriate venue to resolve the instant suit. Indeed, plaintiffs do not argue they have a connection to this Division which would make it more convenient for them to litigate in San Antonio.[1] The Fifth Circuit has voiced an increasing intolerance for denying a 28 U.S.C. § 1404(a) motion to transfer venue in cases which have no specific nexus to the litigation. For example, in *In re Horshoe Entm't, Inc.,* 337 F.3d 429 (5th Cir. 2003), *In re Volkswagen of Am., Inc.,* 545 F.3d 304 (5th Cir. 2008), and *In re Radmax,* 720 F.3d 285 (5th Cir. 2013), the failure to transfer a case away from a venue which had little or no connection to the dispute was not just error, but a clear abuse of discretion. Here, festival organizers have demonstrated that Austin has a significant relationship to the parties, witnesses, and sources of proof, along with an interest in the subject matter of this litigation. The San Antonio Division has no such relationship or interest. Accordingly, defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) shall be granted and this case transferred to the Austin Division.

IT IS THEREFORE ORDERED that Defendants' SXSW, LLC and SXSW Holdings, Inc.'s Motion to Transfer Venue (docket no. 7) is GRANTED such that this case transferred to the Austin

---

[1] Although one of plaintiffs' attorneys is located in San Antonio, this is not a factor the Court takes into account when considering a 28 U.S.C. § 1404(a) motion. *In re Horseshoe Entm't,* 337 F.3d 429, 434 (5th Cir. 2003) (explaining that location of counsel is not proper factor in § 1404(a) analysis).

Division pursuant to 28 U.S.C. § 1404(a). Because the Court finds transfer of the case is appropriate, it will refrain from addressing either of the pending motions to dismiss (docket nos. 23 & 24) so the transferree court in Austin may consider and rule on these motions.

It is so ORDERED.

SIGNED this 22nd day of April, 2015.

_____
FRED BIERY
CHIEF UNITED STATES DISTRICT JUDGE